**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POLINA BERDNIKOVA,<br>Petitioner,<br>v.<br>JAMES JANECKA, et al.,<br>Respondents. | NO. EDCV 26-5886-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

On October 5, 2026, Polina Berdnikova ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: James Janecka, Warden of the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California; Thomas Giles, Los Angeles Field Office Director for ICE Enforcement and Removal Operations; David Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); and United States Attorney General Todd Blanche (collectively

"Respondents"). (Docket ("Dkt.") No. 1). The Petition alleges, *inter alia*, that Petitioner was improperly arrested and is being detained in violation of due process of law and the Immigration and Nationality Act. (Petition, ¶¶ 31-60). Petitioner seeks, among other things, her immediate release from custody. (Petition, ¶¶ 61-67).

On October 13, 2026, Respondents filed an Answer to the Petition, and Petitioner filed a Reply on October 20, 2026. (Dkt. Nos. 11, 16). On November 14, 2026, Petitioner filed a Motion for Expedited Ruling. (Dkt. No. 17).

The parties have consented to proceed before the undersigned Magistrate Judge in this matter. (See Dkt. Nos. 5, 12). For the reasons discussed below, the Petition and Request for Expedited Ruling are GRANTED and Petitioner is ordered immediately released from custody.

## II.

## BACKGROUND

Petitioner is a native and citizen of Russia who lawfully entered the United States on August 30, 2025 pursuant to a B-2 visitor's visa. (Petition, ¶¶ 2, 15, 21 & Exh. B). Petitioner was authorized to remain in the United States until February 28, 2026. (Petition, ¶ 21 & Exh. B). On January 29, 2026, Petitioner applied to change her status to F-1 student. (Petition, ¶¶ 2, 22 & Exh. C). United States Citizenship and Immigration Services ("USCIS") denied Petitioner's application on September 1, 2026. (Petition, ¶ 22).

On August 22, 2026, Petitioner filed an application for asylum and withholding of removal with USCIS, which remains pending. (Petition, ¶¶ 2, 23 & Exh. D).

On September 14, 2026, ICE detained Petitioner when she appeared as directed for a biometrics appointment for her asylum application. (Petition, ¶ 24). On September 18, 2026, Petitioner was placed in removal proceedings. (Petition, ¶ 26).

Petitioner has a serious documented seizure disorder, has undergone brain surgery, and requires consistent and continuing medical care. (Petition, ¶¶ 4, 27). Her seizures have increased in frequency and severity with detention. (Petition, ¶¶ 4, 28-29). She has no criminal history. (Petition, ¶ 3).

## III.
## DISCUSSION

### A. **<u>Exhaustion of Administrative Remedies is not Required</u>**

Respondents contend this action should be dismissed because Petitioner failed to exhaust her administrative remedies by seeking a bond hearing before an Immigration Judge ("IJ") and then, if not released, appealing to the Board of Immigration Appeals ("BIA"). (Answer at 9-10). Petitioner disagrees, arguing exhaustion would be inadequate and futile. (Petition, ¶¶ 10-14; Reply, ¶¶ 3-6).

"In order to seek habeas relief under section 2241, . . . a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies." Singh v. Napolitano, 649 F.3d 899, 900 (9th Cir. 2010) (per curiam) (citation omitted); see also Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) ("The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims."); Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) ("As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241."). Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez, 872 F.3d at 988 (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court does not believe the three Puga factors weigh in favor of prudential exhaustion.[1] But even assuming they do, "Petitioner [is] excused from exhausting administrative remedies because further administrative proceedings would not address the primary issue presented in the Petition — whether Petitioner's [arrest and] detention complies with statutory authority and due process." Alvarez-Guatibonza v. Adelanto ICE Processing Ctr., 2026 WL 1770663, *3 (C.D. Cal. 2026); see also R.N.G. v. Semaia, 838 F. Supp. 3d 1035, 1043 (C.D. Cal. 2026) ("Here, even if the Court assumes that the *Puga* factors apply, Petitioner's pursuit of administrative remedies would be inadequate and futile. . . . A post-deprivation bond hearing . . . would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest." (emphasis in original)); Garcia v. Hyde, 817 F. Supp. 3d 112, 125 (D. R.I. 2025) ("Mr. Garcia ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile."); Cao v. Warden of Adelanto ICE Processing Ctr., 2026 WL 2575932, *2 (C.D. Cal. 2026) ("Petitioner contends that the Government violated the Fifth Amendment by taking her into custody without pre-deprivation process. The BIA's authority in a custody appeal extends to redetermination of custody, not to the constitutionality of the arrest that preceded it.

---

[1] For instance, "the BIA's expertise is not necessary to decide the *legal* questions at issue here — whether Petitioner's continued detention complies with statutory authority and due process." Alvarez-Guatibonza v. Adelanto ICE Processing Ctr., 2026 WL 1770663, *2 (C.D. Cal. 2026) (italics in original); Hernandez, 872 F.3d at 989; Fuentes v. Mullin, 2026 WL 1847436, *6 (C.D. Cal. 2026); Soriano v. Hernandez, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026).

Requiring exhaustion of a remedy that could not redress the claim would serve none of the doctrine's purposes."). "Moreover, requiring Petitioner to be subjected to unlawful detention pending [exhaustion] would cause irreparable harm, which is a separate and independent basis to waive exhaustion[.]" Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Kumar v. Rios, 2026 WL 1764923, *3 (C.D. Cal. 2026); see also Hernandez v. Mullin, 2026 WL 846037, *8 (C.D. Cal. 2026) ("[R]equiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending the BIA's decision would cause irreparable harm, which alone provides a sufficient basis to waive exhaustion. . . ."). Accordingly, for these reasons, Petitioner is excused from having to exhaust administrative remedies, and Respondents' request to dismiss the pending Petition for failure to exhaust administrative remedies is denied.

**B. Petitioner is Entitled to Relief on Her Due Process Claim**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez, 872 F.3d at 990; Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from

government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013). First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

Petitioner alleges she was denied due process of law when ICE detained her without notice and a pre-deprivation hearing. (Petition,

¶¶ 46-60). However, Respondents maintain that Petitioner's arrest and detention comply with due process. (Answer at 5-6).

Here, Petitioner arrived in the United States on a visitor's visa on August 30, 2025, subsequently filed an application to adjust her status on January 29, 2026, and thereafter filed an application for asylum, which remains pending. Based on Petitioner's applications, immigration officials were aware of Petitioner's continued presence in the United States following the expiration of her visitor's visa, yet did not promptly detain Petitioner after she overstayed her visa. Under these circumstances, Petitioner has a protected liberty interest in remaining free from custody. See Wang v. Mullin, 2026 WL 3413095, *5 (C.D. Cal. 2026) ("Petitioner entered the U.S. on a student visa in August 25, 2025 and was originally authorized to remain through August 24, 2026. During that time, he applied for asylum, which application remains pending. Although Respondents now contend that the visa was terminated in May 2026 due to poor class attendance, they took no action to detain Petitioner for the next five months. Petitioner therefore obtained a liberty interest in release that is protected by the Fifth Amendment Due Process Clause."); Yuan v. Warden of Adelanto ICE Processing Ctr., 2026 WL 3308173, *4 (C.D. Cal. 2026) ("District courts generally reason that 'the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release.' Many courts have found this includes noncitizens who have overstayed their visa. Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired." (citations omitted; italics in original));

Balbabyan v. Blanche, 2026 WL 2678267, *2 (C.D. Cal. 2026) ("Petitioner entered the United States in 2025 on a visitor visa and has a pending asylum application. ICE was aware of his presence given his application and his appearances at ICE appointments and interviews, but chose not to detain him. Petitioner established a life for himself in the United States and therefore has acquired a protected liberty interest in his release from immigration custody."); Yao v. Janec[k]a, 2026 WL 2666861, *1-2, 4 (C.D. Cal. 2026) ("Here, the Court finds that Petitioner[, who was initially lawfully admitted to the United States pursuant to a nonimmigrant visitor's visa and subsequently sought asylum,] has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her []detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief."); Zhou v. Janec[k]a, 2026 WL 2365550, *5 (C.D. Cal. 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); Kalkan v. Chestnut, 2026 WL 788112, *1 (E.D. Cal. 2026) (petitioner had a protected liberty interest when "petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status"), appeal dismissed by, 2026 WL 2446315 (9th Cir. 2026).

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient. Under Mathews, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993; Zhou, 2026 WL 2365550 at *5; Abdeltawab v. Armant, 2026 WL 1045564, *2 (C.D. Cal. 2026).

As to the first factor, "Petitioner has a substantial interest in remaining in the community and pursuing her application for immigration relief." Yao, 2026 WL 2666861 at *5; Zhou, 2026 WL 2365550 at *5; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.' That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and

participating in the community, all out of custody.");. Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite her protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition, ¶¶ 3, 24). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez v. Noem, 821 F. Supp. 3d 1183, 1191 (C.D. Cal. 2026) ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Wang, 2026 WL 3413095 at *5 ("The facts of this case amply demonstrate the value of a pre-deprivation hearing. Respondents have never explained — either to Petitioner at the time of his ICE arrest or in the present proceedings — why he needs to be detained while awaiting adjudication of his asylum application. There is no evidence in the record that Petitioner has committed any crimes or that he has ever absconded from immigration proceedings. Indeed, he voluntarily appeared for the biometrics appointment at which he was detained."); Yao, 2026 WL 2666861 at *5 ("[T]here is a

significant risk that the government will erroneously deprive Petitioner of [her] liberty interest if it does not provide her with pre-deprivation process."); Troykalo v. Armant, 2026 WL 2602910, *5 (C.D. Cal. 2026) ("Where, as here, a petitioner has not received a hearing or other process prior to the revocation of her liberty, the risk of an erroneous deprivation of liberty is high." (citations omitted)); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Therefore, the second Mathews factor favors Petitioner.

"Third, courts have routinely recognized that the Government's interest in detaining individuals like Petitioner without a hearing is 'low.'" Abdeltawab, 2026 WL 1045564 at *3 (citations and emphasis omitted); Wang, 2026 WL 3413095 at *5; Balbabyan, 2026 WL 2678267 at *4; see also Troykalo, 2026 WL 2602910 at *5 ("Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal."); Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Chaparro Ayala v. Albarran, 2026 WL 2722780, *6 (N.D. Cal. 2026) (same). And that is particularly so when, as here, "the government has not articulated any

legitimate interest in support of detaining Petitioner without a pre-detention hearing."[2] Kharitonova v. Albarran, 2026 WL 531441, *3 (N.D. Cal. 2026); Zhou, 2026 WL 2365550 at *6; Yao, 2026 WL 2666861 at *5; see also Chaparro Ayala, 2026 WL 2722780 at *6 ("Respondents' present no explanation for why their 'interests [in detaining Petitioner] must be satisfied immediately,' far be it one that outweighs the risk of an ongoing and erroneous deprivation of constitutional rights." (quoting E.A. T.-B v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025))). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)); Pinchi, 792 F. Supp. 3d at 1036 ("Nor can the government suggest that the cost of providing [a pre-deprivation hearing] would be fiscally or administratively onerous. If the government wishes to detain Ms. Garro Pinchi, it need only provide a hearing before a neutral decisionmaker. 'In immigration court, custody hearings are routine and impose a minimal cost.'" (citation omitted)); Chaparro Ayala, 2026 WL 2722780 at *6 ("[T]he fiscal and administrative burdens of a pre-deprivation hearing are insignificant."). Thus, the third Mathews factor favors Petitioner.

---

[2] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

Therefore, applying the Mathews factors, Petitioner was denied due process of law when she was detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Wang, 2026 WL 3413095 at *3-5 ("[A]ll three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention" and the failure to do so deprived him of due process of law); Balbabyan, 2678267 at *4 ("[G]iven petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment."); Zhou, 2365550 at *6 ("Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention — which was accompanied by no process — violates the Due Process Clause."); Yao, 2026 WL 2666861 at *6 (same); Ordonez v. Mullin, 2026 WL 1630411, *4 (C.D. Cal. 2026) (same). And "[b]ecause

Petitioner's deprivation of liberty without due process has been unlawful from its inception, her immediate release is required."[3] Torres Ferrera, 2026 WL 776145 at *6 see also Martinez, 821 F. Supp. 3d at 1196 ("Petitioner's release from custody is the appropriate remedy" since among other things, "Petitioner continues to suffer irreparable harm so long as she remains unlawfully []detained"); Wang, 2026 WL 3413095 at *5 ("Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights."); Balbabyan, 2026 WL 2678267 at *4 ("Because petitioner's detention was unlawful, the proper remedy is release from custody."); Kositsin v. Santacruz, 2026 WL 2866467, *4 (C.D. Cal. 2026) ("Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that Petitioner's detention without adequate pre-deprivation process violated due process" and he is entitled to be released from custody); Ordonez, 2026 WL 1630411 at *4 ("As has been found in countless similar cases in this Circuit, the appropriate remedy . . . is to order Petitioners placed in the position they would have been absent the due process violation — that is, they should be released from custody on the conditions that were initially imposed.").

\\

\\

---

[3] Having so concluded, the Court does not address the other claims Petitioner raises.

## IV.

## ORDER

Accordingly, it is hereby ORDERED that the Petition and Motion for an Expedited Ruling (Dkt. Nos. 1, 17) are **GRANTED**. Respondents shall immediately release Petitioner (A# 237-016-286) from immigration custody without the imposition of any restraints on her liberty. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations. The Court further ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on November 20, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: November 18, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE